UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DeAndre Crawford, )
)
Plaintiff, )
)
vs. ) Case No. 1:18-cv-4482
)
Charles Best, et al., )
)
Defendants. )

The Remote Videoconferenced Discovery Deposition of MAURICE LAKE, taken in the above-entitled cause before Deborah T. Brauer, a notary public within and for the County of Lake and State of Illinois, and a Certified Shorthand Reporter of said State, taken on the 14th day of October, 2021 at the hour of 9:20 o'clock a.m., pursuant to notice.



APPEARANCES:
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
BY: MR. SAMUEL P. MYLER (Via Videoconference)
MR. MARK McLAUGHLIN (Via Phone)
smyler@mayerbrown.com
markmclaughlin@mayerbrown.com
appeared on behalf of the Plaintiff,
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
BY: MR. JONATHAN KANGWA (Via Videoconference)
jonathan.kangwa@ilag.gov
appeared on behalf of Defendants, Marc Anastacio, Jeannette Bennett, Ralph Burkybile, Brett Carnahan, Tanesha Carroll, Jermiagh Daly, Brian Givens, Brian Heplin, Randy Pfister, Terrance Ragusa, and Christopher Whitfield;

CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, Illinois 60606
BY: MR. JOSEPH LOMBARDO (Via Videoconference)
jlombardo@cassiday.com

appeared on behalf of Defendants, Dr. Evaristo Aguinaldo, Lidia Diaz, Estate of Dr. Obaisi.

INDEX

DEPOSITION OF MAURICE LAKE
OCTOBER 14, 2021

| EXAMINATION BY: | PAGE |
|---|---|
| Mr. Myler | 4 |
| Mr. Lombardo | 31 |
| Mr. Myler (further) | 32 |
| Mr. Lombardo (further) | 33 |
| Mr. Myler (further) | 34 |

EXHIBITS

| NUMBER | PAGE REFERRED TO |
|---|---|
| Lake Deposition Exhibits | |
| 1 (marked) | 9 |

THE COURT REPORTER: Good morning. My name is Deborah Brauer. At this time, I will ask counsel to identify yourselves and agree on the record that there is no objection to this deposition officer administering a binding oath to the witness via Zoom. Please state your agreement on the record.

MR. MYLER: Sam Myler, I represent the plaintiff DeAndre Crawford. We have no objection to administering an oath remotely.

MR. KANGWA: Jonathan Kangwa on behalf of the IDOC defendants. I agree.

MR. LOMBARDO: Joe Lombardo on behalf of defendants Dr. Aguinaldo, Nurse Lidia Diaz, and the Estate of Dr. Obaisi. And we agree.

(Witness sworn remotely.)

MAURICE LAKE,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. MYLER:

Q. Good morning, Major Lake. Is it Major Lake?
A. Yes.
Q. Good morning. I'm Sam Myler. I have been appointed by the court or recruited by the court to

represent the plaintiff in this lawsuit, DeAndre Crawford, in connection with his claims against a number of the individuals employed by IDOC and certainly individuals employed by Wexford. Do you understand that you're here today to provide testimony as a witness on behalf of the Illinois Department of Corrections, correct?
A. Yes.
Q. And just before we go any further, can you hear me okay? Is it coming in okay?
A. Yeah. Hold on. Let me try to turn it up a little bit.

(Off the record.)

BY MR. MYLER:

Q. I think we left off, I was explaining that you have been designated to provide testimony on behalf of the IDOC defendants, is that correct?
A. Yes.
Q. Okay. When were you asked or informed that you would be providing testimony in this capacity today?
A. About a week ago, two weeks ago. Approximately a week to two weeks ago.
Q. Okay. And who was it that informed you that



you would be providing this testimony?
A. The Illinois Department of the Corrections, Stateville Legal Department, Lora Haven.
Q. Okay. What was that individual's name?
A. Haven. Lora Haven.
Q. Lora Haven. Okay. And what did Ms. Haven explain to you in terms of the scope of your testimony or the topics that you'd be expected to testified to here today?
A. About a couple -- two categories. Something having to do with -- I don't recall but --
MR. KANGWA: It's going to be 7 and 9 on the 30(b) (6) notice.
BY MR. MYLER:
Q. Okay. 7 and 9. Major Lake, have you ever been deposed before?
A. Yes.
Q. And how many times?
A. Two, three times before.
Q. And can you explain the circumstances surrounding those depositions, why you were deposed and what you testified to?
A. Inmate issues, policies and procedures of the Illinois Department of Corrections Stateville.

Q. Okay. Before I go any further, I'll just kind of give you a very brief summary of what we'll be going through here today. As I mentioned, you have been designated as a 30 (b)(6) witness or a representative witness for IDOC so you're providing testimony on behalf of the Illinois Department of Corrections. You have been sworn in, you're under oath, and therefore you have an obligation to answer all my questions truthfully and accurately to the best of your ability. Is that all understood?
A. Yes.
Q. I don't anticipate us needing more than a half a day at the most, probably less than a couple hours if you have just been designated to testify to topics 7 and 9, but if during that time you need a break or anything, let me know, we can take a break. I'll likely take at least one break myself just to kind of be sure I'm organized on everything I need to cover. If you need a break, need to step out, that's fine. Just let us know and we'll find a time to do that. Is that understood?
A. Yes.
Q. Okay. We haven't had any problems thus far, but it's important to remember that we shouldn't talk

over each other because the court reporter will be preparing a transcript of our conversation today, and if we're talking over each other, it's difficult for her to record everything. Is that understood?
A. Yes.
Q. The same goes for responding to questions or asking questions. I'll try to avoid any nonverbal type of cues, like pointing at documents or pointing at materials. If you could similarly try to avoid head nods or shaking your head to answer questions, that would be helpful because she has a difficult time recording those types of actions or ways to communicate.
Okay. Sir you said you have been designated to testify to topics 7 and 9. I'm going to show a document on my screen, hopefully you'll be able to see it on your screen. If you could give me one minute.
Can you see a document that I'm trying to display on the screen here?
A. Okay. Yeah, I see. I can't read it.
Q. Is it too small?
A. Yes.
Q. Okay. Let's see if I can zoom in a bit here. Does that make it any better?

A. Yes, a little bit. I can't see it too clear, I want to let you know that now.
Q. Okay. So we'll try, and if we are having a lot of trouble we'll see if we can get someone to help you out on your end here.
Do you recognize this document that I have put up on the screen here?
A. Okay. Yes.
Q. Okay.
A. Yes.
Q. And can explain your understanding of what this document is?
A. It states, for the United States District Court for the subpoena to testify, deposition in a Civil Action.
Q. Okay. And we'll mark this as Lake Exhibit 1. I'm going to scroll down here. And let me ask you, have you -- were you shown this document prior to the deposition today either by Ms. Haven or anyone else?
A. Yes.
Q. Okay. And I'm going to scroll down to the end. There is a list of topics at Exhibit A in which Mr. Crawford asked that IDOC produce someone to testify to a number of different matters. And my understanding



is that you have testified that you'll only be testifying to topics No. 7 and 9, is that correct?
A. Yes.
Q. And 7, I'll just read it into the record, is, "The process by which inmates can request replacement mattresses, bedding, blankets, or other essentials related to the conditions of their confinement."
And then 9 is, "The processes or protocols correctional officers are expected to follow if they are informed by an inmate of issues related to the inmate's conditions of confinement, including issues related to plumbing or the lack of appropriate bedding."
Did I read that correctly?
A. Yes.
Q. Okay. We're going to talk about the topics a bit more the depth, but I just want to know whether you did anything in order to prepare for your deposition today in preparing yourself to testify to these topics?
MR. KANGWA: Major Lake, and we can put this on the record, any of our conversations can be privileged, so you don't have to give any information regarding the contents of those conversations. You can mention whether and if we spoke.

THE WITNESS: Okay.
BY MR. MYLER:
Q. So I'll ask again, did you do anything to prepare to testify today regarding topics 7 and 9?
A. No.
Q. Okay. You didn't review any documents prior to this deposition?
A. Just -- is there anything else out of that, no.
Q. You didn't conduct any interviews or meet with anyone at IDOC to discuss either of these topics?
A. No.
Q. Okay. Can you explain, the best you can, why you were asked to provide testimony with respect to topics 7 and 9?
MR. KANGWA: I object to foundation, calls for speculation.
You can answer.
THE WITNESS: I don't understand. Well, I don't know really want you want but --
BY MR. MYLER:
Q. Let me come at this a different way. My understanding is that you're currently employed by IDOC, is that correct?

A. That's correct.
Q. And what is your current position?
A. Major.
Q. Major. And what do your responsibilities as Major entail?
A. Security, custody, control the daily activity of deploying staff to their assignments, reporting of unusual incidents on a daily -- during a daily basis.
Q. Okay. Do you supervise any IDOC employees?
A. Yes, I -- yes.
Q. How many employees would you say you supervise?
A. On the day shift, approximately 150 to 300 officers.
Q. Okay. And who do you report to on a day-to-day basis?
A. Assistant Warden of Operations for Stateville Correctional Center and the Warden of Stateville Correctional Center.
Q. The Assistant Warden, does he report -- he or she report directly to the Warden?
A. Yes.
Q. Okay. Are there IDOC employees that are between you and the 150 employees you supervise? In

other words, I'm trying to just get a sense of where you are on kind of the hierarchy of a correctional officer on the gallery, how they compare to you and whether you are their direct supervisor or if there are other individuals below you that supervise those individual officers?
A. Okay. So there is officers, sergeants, lieutenants, and then there is what I am, the major. I report to the Assistant Warden of Operations and the Warden of Stateville Correctional Center.
Q. Okay. So between you and the individual correctional officer, there are lieutenants and sergeants, correct?
A. Officers, sergeants, and lieutenants.
Q. Okay. And how do your day-to-day responsibilities differ from those of sergeants and lieutenants?
A. I --
Q. How do your individual responsibilities differ from those of sergeants and lieutenants?
A. I'm more administrative. If unusual incidents happen during the shift, during my eight hour shift from the officers, the sergeants or lieutenants, they'll report all unusual incidents to the majors.



Q. Understood. So is it safe to say that you aren't responsible on a day-to-day basis for doing rounds either in the cell house or in galleries, is that correct?
A. So I walk around mainly through the cell houses or through other assignments within the institution, yes.
Q. And you're here to testify regarding topics 7 and 9, which relate to processes and protocols followed if an officer is informed of issues related to an inmate's conditions of confinement. Can you explain how it is that you're familiar with those processes?
A. I have been here -- probably 'cause I have been here 30 years.
Q. Okay. Are you responsible for developing or creating those processes or protocols?
A. No.
Q. Okay. And are you responsible for training individuals regarding them?
A. No.
Q. Are you responsible for ensuring that they're followed?
A. Yes.
Q. Okay. And how is it that you accomplish that

task?
A. Through the higher authority such as lieutenants and sergeants.
Q. Okay. So why don't I ask you just an open-ended question. I'll let you explain to me how it works, but could you give me your best summary of the process involved in addressing issues related to an inmate's conditions of confinement?
A. Sure. Such as complaints, is that what you mean?
Q. Sure. Sure. Let's assume that an inmate has an issue with the plumbing in their cell, the hot water won't turn on, or the water won't turn off or an inmate doesn't have a mattress for some reason. Can you just walk me through step by step the process in place to have that issue addressed?
MR. KANGWA: I'll just object that the question is compound.
Major, you can answer.
THE WITNESS: First of all, the officer -- the gallery officer, who he's patrolling the galleries or in the cell house, an inmate might approach him from outside of the bars and address that he has an issue with his plumbing, the water don't work or the toilet

doesn't flush or he needs new sheets or he had torn sheets or any type of complaints inside the cell, he notifies the gallery officer. Okay. The gallery officer notifies his sergeant. If the sergeant can't do it on his level, which if it's a plumbing problem, anything that has to do with maintenance, no officer will do any kind of maintenance issues, maintenance problems and maintenance correction. The sergeant will put in a work order to the maintenance department, the chief engineer. The chief engineer will send this maintenance craftsman to the cell house, whether it be that day or week or month 'cause it's a big institution, it's whenever the chief engineer sends a craftsman to that particular cell house or locations within the institution. Okay. If I could say, the chief engineer will send him to the cell house, but under no circumstance no officer will fix any kind of maintenance issues.
BY MR. MYLER:
Q. Okay. So it sounds like, in the case of a plumbing issue, the process starts with simply the inmate informing the gallery officer, which I take to be the officer that kind of he sees everyday that walks by his cell, kind of the first -- the first level of

IDOC employee that the inmate has to deal with on a day-to-day basis, is that correct?
A. Yes.
Q. Okay. And there is no form, there are no -- there are no forms to fill out, there are no special documents or papers the inmate needs to prepare, he simply just says to the gallery officer, hey, this is the problem he's having, is that right?
A. Yes.
Q. Okay. And is there any other alternative way to have an issue addressed, other than just going to a gallery officer or is that always kind of the first line of -- the first way to try to have it remedied?
MR. KANGWA: I object as vague, just -- you're talking about the plumbing specifically?
THE WITNESS: The individual in custody can notify the gallery officer. If the individual in custody sees a sergeant he can notify the sergeant. If he sees a cell house lieutenant, he can notify them as well.
BY MR. MYLER:
Q. Okay.
A. But all complaints of plumbing issues has to be documented through a work order to be sent again to the chief engineer's office, and then he will issue the



work order to the maintenance craftsman.
Q. So that sounds like that's the process for plumbing issues. Now if an individual has an issue related to his bedding, he doesn't have a mattress, his mattress is removed or he doesn't know where it's at, what is the process or how might it be different?
A. Like after a shakedown, a mass shakedown in which state tactical officers will take torn mattresses or mattresses that they probably found contraband in it or torn up mattresses or mattresses without covers, they would take those mattresses out and throw them in the dumpster. All mattresses will be replaced that same day.
Now, we have two institution parts to the institution. We can get a mattress, not a new mattress, but we can get a mattress. We have mattresses stacked -- I mean, we're a reception center, so we have to have mattresses, provide mattresses to all individuals in custody. If an inmate doesn't have their mattress after the shakedown or during that shift, one of the three shifts, usually the next shift will provide that individual in custody with the mattress. No exceptions.
Q. Okay. Has there ever been an incident that

you're aware of in which there were no replacement mattresses available?
A. We're a reception center, we have mattresses. We provide 20,000, 30,000 inmates per year going through our reception center and through this institution. We have to provide mattresses to all individuals in custody.
Q. Okay. If an inmate asked for a mattress because his mattress had been removed during a shakedown, how long would it take for him to receive a new or not necessarily new but a replacement mattress?
MR. KANGWA: Objection, foundation, calls for speculation.
Major, you can answer.
THE WITNESS: If the individual in custody informs the sergeant -- the gallery officer or the sergeant that the tac team -- tactical team took his mattress or he has -- the mattress was torn and they threw it away, the mattress was disposed of, the sergeant would go through the lieutenant, the lieutenant will call around, call the reception center or call to any other place where mattresses are stored and get that individual in custody a mattress.

BY MR. MYLER:
Q. And how long does that process take?
MR. KANGWA: Same objections.
THE WITNESS: It's usually done that shift, that particular shift.
BY MR. MYLER:
Q. Okay. And are there any documents or records prepared by any of the correctional officers regarding their efforts to get a new mattress? In other words, if an inmate asked for a mattress, are there work orders prepared that would demonstrate and would show that the individual tried to get the inmate a mattress?
A. No.
Q. Okay. So there is no way to confirm whether a correctional officer actually took the inmate's request and attempted to get the mattress for the inmate?
A. Or if the inmate says it verbally. But if the inmate had written a note, he would give to it the officer, the officer would give it to the sergeant.
Q. Okay. But there is no way to confirm that the officer actually gave it to the sergeant or that the sergeant actually tried to get the mattress from the reception center, for example, it's more of ad hoc

process, is that correct?
A. It's just an inhouse process.
Q. Okay. There is no written documentation or logs prepared in the same way that they're prepared when it's a plumbing issue for example?
A. No.
Q. Okay. This process that you have described, is this a formal process that's written down in some type of directive or some type of training manual or is it just the process -- let me just stop there. Is it a process that's been written down or formalized in any way?
A. Well, it's written down in the administrative directives and institutional policies and procedures. The inmate will receive a mattress, sheets, bedding, hygiene items. We will provide those items, such as soap, which is done once a week or -- we don't deal with trash bags no longer because we collect trash on the gallery, but soap, shampoo, tooth paste, toothbrush.
Q. Okay. So there is a -- there are directives or protocols that confirm that these inmates are entitled to those items, but there is no directive that lays out the process for requesting replacement items?



A. I haven't -- no, I haven't seen any.
Q. Okay. Are you aware of any instances in which an individual's mattress was removed during a shakedown and they did not receive a replacement or a different mattress within 24 hours?
A. No, I haven't. No one ever reported an incident like that to me, no.
Q. Okay. Are you familiar Mr. Crawford's claims in this case?
A. No.
Q. Okay. Mr. Crawford claims that his mattress was removed during an institutional shakedown and that he did not receive a replacement mattress and therefore was forced to sleep on the steel bed frame for a period of 17 days. And you just made a face as if you were surprised, is that correct? I'm having a hard time seeing.
A. Well, I still got this document. I can barely see you. You're in a little box in the corner, but you got this other document up, and I can't --
Q. Okay.
A. I'm looking at this little corner.
Q. Got it.
A. This is a little cell phone. We don't have a

big computer monitor, so it's like a little cell phone. It's hard to read the documents.
Q. I understand. Mr. Crawford claims he was without a mattress for 17 days. My question is whether that surprises you, Major Lake?
A. That would -- yes. That surprises me, yes, 'cause --
Q. Go ahead. I'm sorry.
A. 'Cause if -- every individual in custody in a particular cell house after a shakedown will receive a replacement mattress, not necessarily new, but we will provide them with a mattress, a used mattress, that shift, next shift or within a given -- one of the three shifts.
Q. Okay. And if such a mattress were not provided, so for a period of a number of days, could you explain how that situation might occur or why a new mattress would not be provided?
MR. KANGWA: I'll object here, calls for speculation, it's also an incomplete hypothetical.
THE WITNESS: I haven't heard of any incident where an inmate or an individual in custody doesn't have a mattress. The cell house lieutenants and sergeants and all -- lieutenants and sergeants will

make sure every individual in custody has a mattress in that particular cell house.
BY MR. MYLER:
Q. If there was an instance in which an individual didn't have a mattress for let's say three or four days, and he had requested that a mattress be provided through a number of different individuals on the gallery, would you expect that that issue would be escalated to your level at some point so that you would be made aware of it?
MR. KANGWA: Same objections, calls for speculation, incomplete hypothetical.
THE WITNESS: I would be very surprised that that would happen since we do provide them mattresses during that short period of time. Even if not that shift, next shift or within a 24 hour period, they will -- Stateville will provide a mattress to that individual in custody.
BY MR. MYLER:
Q. Okay. If an individual didn't have a mattress for a number of days, would you expect that the officers under you would inform you about it?
MR. KANGWA: Same objections.
THE WITNESS: Yes, he would inform the lieutenant.

Yes.
BY MR. MYLER:
Q. And would you expect that the lieutenant would inform you at some point?
A. A lieutenant will put a work order -- a lieutenant will put a requisition in. A lieutenant will call around to the reception center or another cell house to get a mattress. If no new mattress through a requisition is available, then he would have to go like, just like I said, to the reception center or another cell house.
Q. Okay. Are you responsible at all for overseeing shakedowns that occur by the Orange Crush Team at Stateville?
A. No.
Q. Are you familiar with the reasons why a mattress may be removed from a cell during one of those shakedowns?
A. No.
Q. Okay. And then I just want to confirm -- I think you answered this, but I just want to be clear on this point, that you're not familiar with the facts and circumstances surrounding Mr. Crawford's claims that he was without a mattress for 17 days, is that correct?



A. No, I'm not familiar with those -- what he's claiming about a mattress, no.
Q. Okay. So you wouldn't know why his mattress wasn't replaced or why they were unable to get him a replacement mattress?
A. No.
MR. MYLER: Okay. If we could just take a ten minute break. I don't know -- John, just to confirm, will Major Lake be the only witness testifying today?
MR. KANGWA: For today, yes.
MR. MYLER: Let's take a ten minute break. I'll see how many questions I have. We may be done here, but that will speed things along while we're live on the record here.
So let's come back if we could at 10:08.
MR. KANGWA: Okay.
(Short break.)
BY MR. MYLER:
Q. I just have a few more questions here today and then we'll be able to wrap this up. This first is, I want to know or I'd like to know what your position was in 2016?
A. I was the correctional -- I was a major, yes.
Q. So you were a major. So you had the same

responsibilities with respect to this process of addressing conditions of confinement in 2016 as you do today?
A. Yes.
Q. Okay. Earlier you mentioned that if an individual didn't have a mattress, that they would be able to get a replacement mattress, not necessarily a new mattress, but a replacement mattress from another part of the facility, is that correct?
A. Yes, we will -- they will find -- we will find a mattress.
Q. Okay. It sounds like it's your understanding that there are a number of replacement mattresses available, that there is not a shortage per se of mattresses?
A. There is no shortage, that I'm aware of, of mattresses in any of the cell houses. If a cell house doesn't have a mattress, we would locate a mattress somewhere within the institution or in a reception center. So at Stateville we will have a replacement mattress.
Q. Okay. If an inmate is offered one of those replacement mattresses, and the inmate feels that there is some sort of issue with it, it's soiled, it's not

suitable for use, could the inmate raise those issues and ask that a different replacement mattress be brought?
MR. KANGWA: I object, it calls for speculation, incomplete hypothetical.
THE WITNESS: Okay. The mattresses, such as from the reception center or another cell house, especially a reception center -- we have a large turnover of mattresses. Now, each mattress is cleaned, the outer layer is cleaned by the individual custody workers. They will wipe those mattress down and stack them. That's at the reception center. If no mattresses is in the cell house, it's not necessary because we can't wipe anything down. But all those mattresses that we get from the reception center or from another cell house are wiped down and given to the individuals in custody.
BY MR. MYLER:
Q. Okay. If the inmate feels that the mattress isn't clean, it's not like he was asking for a new mattress, he would just like a different replacement, could you make that request if he feels that the mattress he was offered isn't clean, you know, because it has mace on it or it's soiled or has some issue?

A. If the mattress -- go ahead.
Q. Or is he expected to sleep on the mattress that he believes is soiled or has mace on it?
MR. KANGWA: I'll object, calls for speculation and incomplete hypothetical.
THE WITNESS: We would not give an individual in custody a soiled mattress, a mattress that has been sprayed with mace or any other -- if it's torn or destroyed, we don't give an individual in custody a destroyed mattress, a mattress that we're going to end up taking back anyway. The mattress has to be in good condition --
BY MR. MYLER:
Q. Okay.
A. -- before we give them to the individual in custody.
Q. Okay. And you mentioned earlier that if for some reason there is no mattress available in the cell house or in another part of the prison, that a requisition form would be completed, is that correct?
A. The requisition forms is when we're ordering new mattresses from the warehouse to give to replace the mattresses in some of the cell houses when it's available. And that's very seldom. That comes from



the business office. We can put requisitions in for new mattresses, maybe we get them, maybe there is a shortage of them. And for like one particular cell house -- say for instance we got 200 -- say 250 beds, and they only give us ten mattresses, it's -- that, you know, count doesn't check. So we just give the new mattresses or use it as a replacement of mattresses such as if medical would put a permit in for a double mattress or if we -- if a gallery officer sees that the mattress is torn, which we don't -- which if it's torn we have to replace the mattress. So we will give him one of those mattresses. There is a very limited supply of new mattresses that we get. Everything is used. I mean, not everything, but we use every mattress as possible.

MR. MYLER: Okay. Understood. Major Lake, thank you for your time today. I don't have any further questions.

MR. LOMBARDO: John, I have a couple. Do you want me to ask them or you can go or can I go first?

MR. KANGWA: Sure, that works well. Go ahead.

MR. LOMBARDO: Okay. Thank you.

EXAMINATION

BY MR. LOMBARDO:

Q. Major Lake, I represent a couple of doctors and a nurse that work at Stateville. Does medical staff have the ability to replace an inmate's mattress?

A. No. I mean -- not replace it. I mean, no.

Q. Does medical staff have the ability to fix an inmate's mattress if they're complaining about it?

MR. MYLER: Objection, vague.

THE WITNESS: I don't understand "fix." I mean, if the mattress is torn or the stuffing is coming out, like I said before, we would locate another mattress through the reception center or another cell house and replace that particular mattress.

BY MR. LOMBARDO:

Q. So my question is just -- I'm focusing it on medical personnel. Did they have the -- are they involved in the process of replacing a mattress, so nurses or doctors?

A. No.

Q. That's a responsibility that falls on IDOC personnel?

A. Yes.

MR. LOMBARDO: Okay. That's all the questions I

have. Thank you.

MR. MYLER: I have some follow-up. I don't know if you want to go ahead, John.

MR. KANGWA: Go ahead, Sam.

FURTHER EXAMINATION

BY MR. MYLER:

Q. Okay. Major Lake, if medical staff were aware of the fact that an individual with chronic medical conditions, back problems, etc. did not have a mattress, could they raise those issues with a correctional officer in an effort to help get the inmate a mattress?

MR. LOMBARDO: Objection, form, foundation.
You can answer.

MR. KANGWA: You can answer the question.

THE WITNESS: If the individual in custody complains about an issue or medical condition that he needs a new mattress, a double mattress, actually that's why I'm saying a double mattress, an extra mattress, then they could provide a permit for him to have two mattresses.

BY MR. MYLER:

Q. Okay. So I'm assuming that since they provide a permit to have two mattresses, they could

also provide some sort of documentation to get one mattress?

A. No. Everybody --

MR. LOMBARDO: Objection to form.
Go ahead.

THE WITNESS: Everybody gets mattresses.

MR. MYLER: Go ahead, John. Sorry.

MR. KANGWA: I don't have anything for follow-up.

FURTHER EXAMINATION

BY MR. LOMBARDO:

Q. Okay. I just have very briefly. Gallery officers make rounds on all galleries at Stateville proper, correct?

A. That's correct.

Q. If a nurse was notified by an inmate that they didn't have a mattress, all that nurse could do was notify an officer or other correctional personnel working for the IDOC?

A. She'll make notification to the gallery officer, the sergeant or the lieutenant, yes.

Q. And gallery officers are having contact with individuals in custody in their cell more frequently than any medical staff, is that accurate? Let me ask -- I'm sorry, I'll withdraw that last question.



That's okay.
Are gallery officers making rounds on each gallery more frequently than nurses?
A. Yes.
MR. LOMBARDO: That's all the questions I have.

FURTHER EXAMINATION

BY MR. MYLER:
Q. One last follow-up. Do nurses make rounds on the galleries as well?
A. I can't hear.
Q. Do nurses make rounds on the gallery as well, either in connection with routine visits to prisoners or passing medication or anything like that?
A. Nurses, they conduct -- they pass medication. They do sick call, hall passes, they issue medication such as blood pressure medication or for chronic illness, those type of medical conditions. When someone is probably not able to come out, they do gallery rounds.
Q. And just to clarify, in connection with those services, do they see prisoners at their cells?
A. Yes.
MR. MYLER: Okay. No further questions for plaintiff.

MR. LOMBARDO: Nothing further. Thank you.
MR. KANGWA: Nothing on my end.
MR. MYLER: Okay. Thank you. We'll take an electronic.
Major Lake, we appreciate you taking the time here today. I think you're have done. So thanks for taking the time.
THE WITNESS: Thank you.
THE COURT REPORTER: What about signature?
MR. KANGWA: We'll waive.
THE COURT REPORTER: So Mr. Myler, you said you're ordering the transcript?
MR. MYLER: Yes, we'll take an electronic version.
THE COURT REPORTER: Mr. Kangwa, do you need a copy?
MR. KANGWA: Yes, can I have a PDF copy, please.
THE COURT REPORTER: Mr. Lombardo, do you need a copy?
MR. KANGWA: Yes, electronic only.
AND FURTHER DEPONENT SAYETH NAUGHT.

STATE OF ILLINOIS )
) SS:
COUNTY OF L A K E )

I, DEBORAH T. BRAUER, a notary public within and for the County of Lake and State of Illinois, do hereby certify that heretofore, to-wit, on the 14th day of October, 2021, personally appeared before me Maurice Blake, a witness in a certain cause now pending and undetermined in the United States District Court of the Northern District of Illinois, wherein DeAndre Crawford is the plaintiff and Charles Best, et al. are the defendants.

I further certify that the witness was by me first duly sworn to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the testimony then given by the said witness was reported stenographically by me in the presence of said witness and afterwards reduced to writing, and the foregoing is a true and complete transcript of the testimony so given by the said witness as aforesaid.

The signature of the witness to the foregoing deposition was waived by agreement of counsel for the respective parties.

I further certify that the taking of this deposition was pursuant to notice, and that there were present at the taking of said deposition the appearances as heretofore noted.

I further certify that I am not counsel for nor in any way related to any of the parties to this suit, nor am I in any way interested in the outcome thereof.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my notarial seal this 19th day of October, 2021.

Deborah T. Brauer, CSR
Notary Public, Lake County, Illinois



**A**

**a.m** 1:14
**ability** 7:10 31:5 31:7
**able** 8:16 26:20 27:7 34:18
**above-entitled** 1:9
**accomplish** 14:24
**accurate** 33:23
**accurately** 7:9
**Action** 9:15
**actions** 8:12
**activity** 12:6
**ad** 20:24
**Adams** 2:14
**address** 15:23
**addressed** 15:16 17:11
**addressing** 15:7 27:2
**administering** 4:5,9
**administrative** 13:21 21:13
**affixed** 37:10
**aforesaid** 36:14 36:19
**ago** 5:22,22,23
**agree** 4:3,11,14
**agreement** 4:6 36:21
**Aguinaldo** 2:17 4:13
**ahead** 23:8 29:1 30:21 32:3,4 33:5,7
**al** 1:6 36:11
**alternative** 17:10
**Anastacio** 2:10
**answer** 7:8 8:10 11:18 15:19 19:14 32:14,15
**answered** 25:21
**anticipate** 7:12
**anyway** 29:11
**appearances** 37:4
**appeared** 2:6,10 2:16 36:6
**appointed** 4:24
**appreciate** 35:5
**approach** 15:22
**appropriate** 10:12
**approximately** 5:23 12:13
**asked** 5:19 9:23 11:14 19:8 20:10
**asking** 8:7 28:20
**assignments** 12:7 14:6
**Assistant** 12:17 12:20 13:9
**assume** 15:11
**assuming** 32:23
**attempted** 20:16
**ATTORNEY** 2:7
**authority** 15:2
**available** 19:2 25:9 27:14 29:18,24
**avoid** 8:7,9
**aware** 19:1 22:2 24:10 27:16 32:8

**B**

**b** 3:9 7:4
**back** 26:15 29:11 32:9
**bags** 21:18
**barely** 22:19
**bars** 15:23
**basis** 12:8,16 14:2 17:2
**bed** 22:14
**bedding** 10:6,13 18:4 21:15
**beds** 30:4
**behalf** 2:6,10,16 4:10,12 5:6,16 7:6
**believes** 29:3
**Bennett** 2:10
**best** 1:6 7:9 11:13 15:6 36:11
**better** 8:24
**big** 16:12 23:1
**binding** 4:5
**bit** 5:12 8:23 9:1 10:17
**Blake** 36:7
**blankets** 10:6
**blood** 34:16
**box** 22:19
**Brauer** 1:10 4:2 36:3 37:14
**break** 7:16,16,17 7:19 26:8,11,17
**Brett** 2:11
**Brian** 2:11,11
**brief** 7:2
**briefly** 33:11
**brought** 28:3
**BROWN** 2:2
**Burkybile** 2:11
**business** 30:1

**C**

**C** 2:1
**call** 19:20,21,21 25:7 34:15
**called** 4:17
**calls** 11:16 19:12 23:19 24:11 28:4 29:4
**capacity** 5:20
**Carnahan** 2:11
**Carroll** 2:11
**case** 1:5 16:20 22:9
**CASSIDAY** 2:13
**categories** 6:10
**cause** 1:10 14:13 16:12 23:7,9 36:7,14
**cell** 14:3,5 15:12 15:22 16:2,11 16:14,16,24 17:19 22:24 23:1,10,23 24:2 25:8,11,17 27:17,17 28:7 28:13,15 29:18 29:23 30:3 31:13 33:22
**cells** 34:21
**center** 12:18,19 13:10 18:17 19:3,5,21 20:24 25:7,10 27:20 28:7,8,12,15 31:13
**certain** 36:7
**certainly** 5:4
**Certified** 1:12
**certify** 36:5,12 37:1,5
**Charles** 1:6 36:10
**check** 30:6
**Chicago** 2:3,8,14
**chief** 16:10,10,13 16:16 17:24
**Christopher** 2:12
**chronic** 32:8 34:16
**circumstance** 16:17
**circumstances** 6:20 25:23
**Civil** 9:15
**claiming** 26:2
**claims** 5:2 22:8 22:11 23:3 25:23
**clarify** 34:20
**clean** 28:20,23
**cleaned** 28:9,10
**clear** 9:1 25:21
**collect** 21:18
**come** 11:22 26:15 34:18
**comes** 29:24
**coming** 5:10 31:11
**communicate** 8:13
**compare** 13:3
**complaining** 31:8
**complains** 32:17
**complaints** 15:9 16:2 17:22
**complete** 36:18
**completed** 29:20
**compound** 15:18
**computer** 23:1
**condition** 29:12 32:17
**conditions** 10:7 10:11 14:11 15:8 27:2 32:9 34:17
**conduct** 11:10 34:14
**confinement** 10:7 10:11 14:11 15:8 27:2
**confirm** 20:14,21 21:22 25:20 26:8
**connection** 5:2 34:12,20
**contact** 33:21
**contents** 10:23
**contraband** 18:9
**control** 12:6
**conversation** 8:2
**conversations** 10:21,23
**copy** 35:15,16,18
**corner** 22:19,22
**correct** 5:7,17 10:2 11:24 12:1 13:13 14:4 17:2 21:1 22:16 25:24 27:9



29:20 33:13,14
**correction** 16:8
**correctional** 10:9 12:18,19 13:2 13:10,12 20:8 20:15 26:23 32:11 33:17
**Corrections** 5:7 6:2,24 7:7
**correctly** 10:14
**counsel** 4:2 36:21 37:5
**count** 30:6
**County** 1:11 36:2 36:4 37:15
**couple** 6:10 7:13 30:19 31:3
**court** 1:1 4:1,24 4:24 8:1 9:14 35:9,11,14,17 36:9
**cover** 7:18
**covers** 18:10
**craftsman** 16:11 16:14 18:1
**Crawford** 1:3 4:8 5:2 9:23 22:11 23:3 36:10
**Crawford's** 22:8 25:23
**creating** 14:16
**Crush** 25:13
**CSR** 37:14
**cues** 8:8
**current** 12:2
**currently** 11:23
**custody** 12:6 17:16,17 18:19 18:22 19:7,15 19:23 23:9,22 24:1,18 28:10 28:17 29:7,9,16 32:16 33:22

**D**

**D** 3:1
**daily** 12:6,8,8
**Daly** 2:11
**day** 1:13 7:13 12:13 16:12 18:13 36:6 37:10
**day-to-day** 12:16 13:15 14:2 17:2
**days** 22:15 23:4 23:16 24:6,21 25:24
**deal** 17:1 21:17
**DeAndre** 1:3 4:8 5:1 36:10
**Deborah** 1:10 4:2 36:3 37:14
**defendants** 1:7 2:10,16 4:11,13 5:17 36:11
**demonstrate** 20:11
**department** 5:6 6:2,3,24 7:6 16:9
**deploying** 12:7
**DEPONENT** 35:20
**deposed** 6:16,21
**deposition** 1:9 3:2,12 4:4 9:14 9:19 10:18 11:7 36:21 37:2,3
**depositions** 6:21
**depth** 10:17
**described** 21:7
**designated** 5:16 7:4,14 8:14
**destroyed** 29:9 29:10
**developing** 14:15
**Diaz** 2:17 4:13
**differ** 13:16,20
**different** 9:24 11:22 18:6 22:5 24:7 28:2,21
**difficult** 8:3,11
**direct** 13:4
**directive** 21:9,23
**directives** 21:14 21:21
**directly** 12:21
**Discovery** 1:8
**discuss** 11:11
**display** 8:19
**disposed** 19:19
**District** 1:1,1 9:13 36:9,9
**DIVISION** 1:2
**doctors** 31:3,19
**document** 8:16 8:18 9:6,12,18 22:18,20
**documentation** 21:3 33:1
**documented** 17:23
**documents** 8:8 11:6 17:6 20:7 23:2
**doing** 14:2
**double** 30:8 32:18,19
**Dr** 2:17,17 4:13 4:14
**Drive** 2:2
**duly** 4:17 36:13
**dumpster** 18:12

**E**

**E** 2:1,1 3:1,9 36:2
**earlier** 27:5 29:17
**EASTERN** 1:2
**effort** 32:11
**efforts** 20:9
**eight** 13:22
**either** 9:19 11:11 14:3 34:12
**electronic** 35:4 35:13,19
**employed** 5:3,4 11:23
**employee** 17:1
**employees** 12:9 12:11,23,24
**engineer** 16:10 16:10,13,16
**engineer's** 17:24
**ensuring** 14:21
**entail** 12:5
**entitled** 21:23
**escalated** 24:9
**especially** 28:7
**essentials** 10:6
**Estate** 2:17 4:14
**et** 1:6 36:11
**Evaristo** 2:17
**Everybody** 33:3 33:6
**everyday** 16:23
**EXAMINATI...** 3:4 4:19 31:1 32:5 33:9 34:6
**examined** 4:18
**example** 20:24 21:5
**exceptions** 18:23
**Exhibit** 9:16,22
**Exhibits** 3:12
**expect** 24:8,21 25:3
**expected** 6:8 10:9 29:2
**explain** 6:7,20 9:11 11:13 14:11 15:5 23:17
**explaining** 5:15
**extra** 32:19

**F**

**face** 22:15
**facility** 27:9
**fact** 32:8
**facts** 25:22
**falls** 31:21
**familiar** 14:12 22:8 25:16,22 26:1
**far** 7:23
**feels** 27:23 28:19 28:22
**fill** 17:5
**find** 7:20 27:10 27:11
**fine** 7:19
**first** 4:17 15:20 16:24,24 17:12 17:13 26:20 30:20 36:13
**fix** 16:17 31:7,10
**Floor** 2:7
**flush** 16:1
**focusing** 31:16
**follow** 10:9
**follow-up** 32:2 33:8 34:8
**followed** 14:9,22
**follows** 4:18
**forced** 22:14
**foregoing** 36:18 36:21
**form** 17:4 29:20 32:13 33:4
**formal** 21:8
**formalized** 21:11
**forms** 17:5 29:21
**found** 18:9
**foundation** 11:16 19:12 32:13
**four** 24:6
**frame** 22:14
**frequently** 33:22 34:3
**further** 3:6,7,7 5:9 7:1 30:17 32:5 33:9 34:6 34:23 35:1,20 36:12 37:1,5

**G**

**galleries** 14:3 15:21 33:12 34:9



**gallery** 13:3 15:21 16:3,3,22 17:7,12,17 19:16 21:19 24:8 30:9 33:11 33:19,21 34:2,3 34:11,19
**GENERAL** 2:7
**give** 7:2 8:17 10:22 15:6 20:19,20 29:6,9 29:15,22 30:5,6 30:11
**given** 23:13 28:16 36:15,19
**Givens** 2:11
**go** 5:9 7:1 19:19 23:8 25:10 29:1 30:20,20,21 32:3,4 33:5,7
**goes** 8:6
**going** 6:12 7:3 8:15 9:17,21 10:16 17:11 19:4 29:10
**good** 4:1,21,23 29:11

**H**

**H** 3:9
**half** 7:13
**hall** 34:15
**hand** 37:10
**happen** 13:22 24:14
**hard** 22:16 23:2
**Haven** 6:3,5,5,6,6 9:19
**head** 8:9,10
**hear** 5:10 34:10
**heard** 23:21
**help** 9:4 32:11
**helpful** 8:11
**Heplin** 2:11
**heretofore** 36:5 37:4
**hereunto** 37:9
**hey** 17:7
**hierarchy** 13:2
**higher** 15:2
**hoc** 20:24
**Hold** 5:11
**hopefully** 8:16
**hot** 15:12
**hour** 1:13 13:22 24:16
**hours** 7:14 22:5
**house** 14:3 15:22 16:11,14,16 17:19 23:10,23 24:2 25:8,11 27:17 28:7,13 28:16 29:19 30:4 31:13
**houses** 14:6 27:17 29:23
**hygiene** 21:16
**hypothetical** 23:20 24:12 28:5 29:5

**I**

**identify** 4:3
**IDOC** 4:10 5:3 5:17 7:5 9:23 11:11,24 12:9 12:23 17:1 31:21 33:18
**Illinois** 1:1,11 2:3 2:7,8,14 5:6 6:2 6:24 7:6 36:1,5 36:9 37:15
**illness** 34:17
**important** 7:24
**incident** 18:24 22:7 23:21
**incidents** 12:8 13:22,24
**including** 10:11
**incomplete** 23:20 24:12 28:5 29:5
**individual** 13:6 13:11,19 17:16 17:17 18:3,22 19:15,23 20:12 23:9,22 24:1,5 24:17,20 27:6 28:10 29:6,9,15 32:8,16
**individual's** 6:4 22:3
**individuals** 5:3,4 13:5 14:19 18:19 19:7 24:7 28:16 33:22
**inform** 24:22,24 25:4
**information** 10:22
**informed** 5:19,24 10:10 14:10
**informing** 16:22
**informs** 19:15
**inhouse** 21:2
**inmate** 6:23 10:10 15:11,13 15:22 16:22 17:1,6 18:19 19:8 20:10,12 20:17,18,19 21:15 23:22 27:22,23 28:1 28:19 32:12 33:15
**inmate's** 10:11 14:11 15:8 20:15 31:5,8
**inmates** 10:5 19:4 21:22
**inside** 16:2
**instance** 24:4 30:4
**instances** 22:2
**institution** 14:7 16:13,15 18:14 18:15 19:6 27:19
**institutional** 21:14 22:12
**interested** 37:7
**interviews** 11:10
**involved** 15:7 31:18
**issue** 15:12,16,23 16:21 17:11,24 18:3 21:5 24:8 27:24 28:24 32:17 34:15
**issues** 6:23 10:10 10:11 14:10 15:7 16:7,18 17:22 18:3 28:1 32:10
**items** 21:16,16,23 21:24

**J**

**Jeannette** 2:10
**Jermiagh** 2:11
**jlombardo@ca...** 2:15
**Joe** 4:12
**John** 26:8 30:19 32:3 33:7
**Jonathan** 2:8 4:10
**jonathan.kang...** 2:9
**JOSEPH** 2:15

**K**

**K** 36:2
**Kangwa** 2:8 4:10 4:10 6:12 10:20 11:16 15:17 17:14 19:12 20:3 23:19 24:11,23 26:10 26:16 28:4 29:4 30:21 32:4,15 33:8 35:2,10,14 35:16,19
**kind** 7:2,17 13:2 16:7,17,23,24 17:12
**know** 7:16,20 9:2 10:17 11:20 18:5 26:3,8,21 26:21 28:23 30:6 32:2

**L**

**L** 36:2
**lack** 10:12
**Lake** 1:9,11 3:2 3:12 4:16,21,21 6:15 9:16 10:20 23:5 26:9 30:16 31:3 32:7 35:5 36:4 37:15
**large** 28:8
**lawsuit** 5:1
**layer** 28:10
**lays** 21:24
**left** 5:15
**Legal** 6:3
**let's** 8:23 15:11 24:5 26:11,15
**level** 16:5,24 24:9
**Lidia** 2:17 4:13
**lieutenant** 17:19 19:20,20 24:24 25:3,5,6,6 33:20
**lieutenants** 13:8 13:12,14,17,20 13:23 15:3 23:23,24
**limited** 30:12
**line** 17:13
**list** 9:22
**little** 5:12 9:1 22:19,22,24 23:1
**live** 26:13
**LLP** 2:2,13
**locate** 27:18 31:12
**locations** 16:14
**logs** 21:4



**Lombardo** 2:15 3:6,7 4:12,12 30:19,22 31:2 31:15,24 32:13 33:4,10 34:5 35:1,17
**long** 19:10 20:2
**longer** 21:18
**looking** 22:22
**Lora** 6:3,5,6
**lot** 9:4

**M**

**mace** 28:24 29:3 29:8
**maintenance** 16:6,7,7,8,9,11 16:18 18:1
**major** 4:21,21 6:15 10:20 12:3 12:4,5 13:8 15:19 19:14 23:5 26:9,23,24 30:16 31:3 32:7 35:5
**majors** 13:24
**making** 34:2
**manual** 21:9
**Marc** 2:10
**mark** 2:4 9:16
**marked** 3:13
**markmclaughl...** 2:5
**mass** 18:7
**materials** 8:9
**matters** 9:24
**mattress** 15:14 18:4,5,15,16,16 18:20,23 19:8,9 19:11,17,18,19 19:23 20:9,10 20:12,16,23 21:15 22:3,5,11 22:13 23:4,11 23:12,12,15,18 23:23 24:1,5,6 24:17,21 25:8,8 25:17,24 26:2,3 26:5 27:6,7,8,8 27:11,18,18,21 28:2,9,11,19,21 28:23 29:1,2,7 29:7,10,10,11 29:18 30:9,10 30:11,15 31:5,8 31:11,12,14,18 32:10,12,18,18 32:19,20 33:2 33:16
**mattresses** 10:6 18:8,9,10,10,11 18:12,17,18,18 19:2,3,6,22 24:14 27:13,15 27:17,23 28:6,9 28:12,14 29:22 29:23 30:2,5,7 30:7,12,13 32:21,24 33:6
**Maurice** 1:9 3:2 4:16 36:7
**MAYER** 2:2
**McLAUGHLIN** 2:4
**mean** 15:10 18:17 30:14 31:6,6,10
**medical** 30:8 31:4,7,17 32:7 32:9,17 33:23 34:17
**medication** 34:13 34:14,15,16
**meet** 11:10
**mention** 10:23
**mentioned** 7:3 27:5 29:17
**minute** 8:17 26:8 26:11
**monitor** 23:1
**month** 16:12
**morning** 4:1,21 4:23
**Myler** 2:3 3:5,6,7 4:7,7,20,23 5:14 6:14 11:2 11:21 16:19 17:20 20:1,6 24:3,19 25:2 26:7,11,18 28:18 29:13 30:16 31:9 32:2 32:6,22 33:7 34:7,23 35:3,11 35:13

**N**

**N** 2:1 3:1
**name** 4:1 6:4
**NAUGHT** 35:20
**necessarily** 19:11 23:11 27:7
**necessary** 28:13
**need** 7:15,18,19 7:19 35:14,17
**needing** 7:12
**needs** 16:1 17:6 32:18
**new** 16:1 18:15 19:11,11 20:9 23:11,17 25:8 27:8 28:20 29:22 30:2,6,13 32:18
**nods** 8:10
**nonverbal** 8:7
**Northern** 1:1 36:9
**notarial** 37:10
**notary** 1:10 36:3 37:15
**note** 20:19
**noted** 37:4
**notice** 1:14 6:13 37:2
**notification** 33:19
**notified** 33:15
**notifies** 16:3,4
**notify** 17:16,18 17:19 33:17
**number** 3:11 5:3 9:24 23:16 24:7 24:21 27:13
**nurse** 4:13 31:4 33:15,16
**nurses** 31:19 34:3,8,11,14

**O**

**o'clock** 1:14
**oath** 4:5,9 7:8
**Obaisi** 2:17 4:14
**object** 11:16 15:17 17:14 23:19 28:4 29:4
**objection** 4:4,8 19:12 31:9 32:13 33:4
**objections** 20:3 24:11,23
**obligation** 7:8
**occur** 23:17 25:13
**October** 1:13 3:3 36:6 37:11
**offered** 27:22 28:23
**office** 2:7 17:24 30:1
**officer** 4:4 13:3 13:12 14:10 15:20,21 16:3,4 16:6,17,22,23 17:7,12,17 19:16 20:15,20 20:20,22 30:9 32:11 33:17,20
**officers** 10:9 12:14 13:6,7,14 13:23 18:8 20:8 24:22 33:12,21 34:2
**okay** 5:10,10,19 5:24 6:4,6,15 7:1,23 8:14,20 8:23 9:3,8,9,16 9:21 10:16 11:1 11:6,13 12:9,15 12:23 13:7,11 13:15 14:15,18 14:24 15:4 16:3 16:15,20 17:4 17:10,21 18:24 19:8 20:7,14,21 21:3,7,21 22:2 22:8,11,21 23:15 24:20 25:12,20 26:3,7 26:16 27:5,12 27:22 28:6,19 29:14,17 30:16 30:22 31:24 32:7,23 33:11 34:1,23 35:3
**once** 21:17
**open-ended** 15:5
**Operations** 12:17 13:9
**Orange** 25:13
**order** 10:18 16:9 17:23 18:1 25:5
**ordering** 29:21 35:12
**orders** 20:11
**organized** 7:18
**outcome** 37:8
**outer** 28:9
**outside** 15:23
**overseeing** 25:13

**P**

**P** 2:1,1,3
**PAGE** 3:4,11
**papers** 17:6
**part** 27:9 29:19
**particular** 16:14 20:5 23:10 24:2 30:3 31:14
**parties** 36:22



37:6
**parts** 18:14
**pass** 34:14
**passes** 34:15
**passing** 34:13
**paste** 21:19
**patrolling** 15:21
**PDF** 35:16
**pending** 36:8
**period** 22:14 23:16 24:15,16
**permit** 30:8 32:20,24
**personally** 36:6
**personnel** 31:17 31:22 33:17
**Pfister** 2:12
**phone** 2:4 22:24 23:1
**place** 15:15 19:22
**plaintiff** 1:4 2:6 4:7 5:1 34:24 36:10
**please** 4:6 35:16
**plumbing** 10:12 15:12,24 16:5 16:21 17:15,22 18:3 21:5
**point** 24:9 25:4 25:22
**pointing** 8:8,8
**policies** 6:23 21:14
**position** 12:2 26:21
**possible** 30:15
**prepare** 10:18 11:4 17:6
**prepared** 20:8,11 21:4,4
**preparing** 8:2 10:19
**presence** 36:16
**present** 37:3
**pressure** 34:16
**prior** 9:18 11:6
**prison** 29:19
**prisoners** 34:12 34:21
**privileged** 10:21
**probably** 7:13 14:13 18:9 34:18
**problem** 16:5 17:8
**problems** 7:23 16:8 32:9
**procedures** 6:23 21:14
**process** 10:5 15:7 15:15 16:21 18:2,6 20:2 21:1,2,7,8,10 21:11,24 27:1 31:18
**processes** 10:8 14:9,12,16
**produce** 9:23
**proper** 33:13
**protocols** 10:8 14:9,16 21:22
**provide** 5:5,16 11:14 18:18,22 19:4,6 21:16 23:12 24:14,17 32:20,24 33:1
**provided** 23:16 23:18 24:7
**providing** 5:20 6:1 7:5
**public** 1:10 36:3 37:15
**pursuant** 1:14 37:2
**put** 9:7 10:20 16:9 25:5,6 30:1,8

**Q**

**question** 15:5,17 23:4 31:16 32:15 33:24
**questions** 7:9 8:6 8:7,10 26:12,19 30:18 31:24 34:5,23

**R**

**R** 2:1
**Ragusa** 2:12
**raise** 28:1 32:10
**Ralph** 2:10
**Randolph** 2:7
**Randy** 2:12
**read** 8:20 10:4,14 23:2
**really** 11:20
**reason** 15:14 29:18
**reasons** 25:16
**recall** 6:11
**receive** 19:10 21:15 22:4,13 23:10
**reception** 18:17 19:3,5,21 20:24 25:7,10 27:19 28:7,8,12,15 31:13
**recognize** 9:6
**record** 4:3,6 5:13 8:4 10:4,21 26:14
**recording** 8:12
**records** 20:7
**recruited** 4:24
**reduced** 36:17
**REFERRED** 3:11
**regarding** 10:22 11:4 14:8,19 20:8
**relate** 14:9
**related** 10:7,10 10:12 14:10 15:7 18:4 37:6
**remedied** 17:13
**remember** 7:24
**Remote** 1:8
**remotely** 4:9,15
**removed** 18:5 19:9 22:3,12 25:17
**replace** 29:22 30:11 31:5,6,14
**replaced** 18:12 26:4
**replacement** 10:5 19:1,11 21:24 22:4,13 23:11 26:5 27:7,8,13 27:20,23 28:2 28:21 30:7
**replacing** 31:18
**report** 12:15,20 12:21 13:9,24
**reported** 22:6 36:16
**reporter** 1:12 4:1 8:1 35:9,11,14 35:17
**reporting** 12:7
**represent** 4:7 5:1 31:3
**representative** 7:5
**request** 10:5 20:16 28:22
**requested** 24:6
**requesting** 21:24
**requisition** 25:6 25:9 29:20,21
**requisitions** 30:1
**respect** 11:14 27:1
**respective** 36:22
**responding** 8:6
**responsibilities** 12:4 13:16,19 27:1
**responsibility** 31:21
**responsible** 14:2 14:15,18,21 25:12
**review** 11:6
**right** 17:8
**rounds** 14:3 33:12 34:2,8,11 34:19
**routine** 34:12

**S**

**S** 2:1 3:9
**safe** 14:1
**Sam** 4:7,23 32:4
**SAMUEL** 2:3
**SAYETH** 35:20
**saying** 32:19
**says** 17:7 20:18
**SCHADE** 2:13
**scope** 6:7
**screen** 8:16,17,19 9:7
**scroll** 9:17,21
**se** 27:14
**seal** 37:10
**Security** 12:6
**see** 8:16,18,20,23 9:1,4 22:19 26:12 34:21
**seeing** 22:17
**seen** 22:1
**sees** 16:23 17:17 17:18 30:9
**seldom** 29:24
**send** 16:10,16
**sends** 16:13
**sense** 13:1
**sent** 17:23
**sergeant** 16:4,4,8 17:18,18 19:16 19:16,19 20:20 20:22,23 33:20
**sergeants** 13:7,13 13:14,16,20,23 15:3 23:24,24
**services** 34:21
**set** 37:9
**shakedown** 18:7



18:7,20 19:10 22:4,12 23:10
**shakedowns** 25:13,18
**shaking** 8:10
**shampoo** 21:19
**She'll** 33:19
**sheets** 16:1,2 21:15
**shift** 12:13 13:22 13:23 18:21,21 20:4,5 23:13,13 24:15,16
**shifts** 18:21 23:14
**short** 24:15 26:17
**shortage** 27:14 27:16 30:3
**Shorthand** 1:12
**show** 8:15 20:11
**shown** 9:18
**sick** 34:15
**signature** 35:9 36:20
**similarly** 8:9
**simply** 16:21 17:7
**Sir** 8:14
**situation** 23:17
**sleep** 22:14 29:2
**small** 8:21
**smyler@maye...** 2:4
**soap** 21:17,19
**soiled** 27:24 28:24 29:3,7
**sorry** 23:8 33:7 33:24
**sort** 27:24 33:1
**sounds** 16:20 18:2 27:12
**South** 2:2
**special** 17:5
**specifically** 17:15
**speculation** 11:17 19:13
23:20 24:12 28:4 29:4
**speed** 26:13
**spoke** 10:24
**sprayed** 29:8
**SS** 36:1
**stack** 28:11
**stacked** 18:17
**staff** 12:7 31:5,7 32:7 33:23
**starts** 16:21
**state** 1:11,12 4:6 18:8 36:1,4
**states** 1:1 9:13,13 36:8
**Stateville** 6:3,24 12:17,18 13:10 24:17 25:14 27:20 31:4 33:12
**steel** 22:14
**stenographically** 36:16
**step** 7:19 15:15 15:15
**stop** 21:10
**stored** 19:22
**Street** 2:7,14
**stuffing** 31:11
**subpoena** 9:14
**suit** 37:7
**suitable** 28:1
**Suite** 2:14
**summary** 7:2 15:6
**supervise** 12:9,12 12:24 13:5
**supervisor** 13:4
**supply** 30:13
**sure** 7:18 15:9,11 15:11 24:1 30:21
**surprised** 22:16 24:13
**surprises** 23:5,6
**surrounding** 6:21 25:23
**sworn** 4:15,18 7:7 36:13

**T**

**T** 1:10 3:9 36:3 37:14
**tac** 19:17
**tactical** 18:8 19:17
**take** 7:16,17 16:22 18:8,11 19:10 20:2 26:7 26:11 35:3,13
**taken** 1:9,12
**talk** 7:24 10:16
**talking** 8:3 17:15
**Tanesha** 2:11
**task** 15:1
**team** 19:17,17 25:14
**ten** 26:7,11 30:5
**terms** 6:7
**Terrance** 2:12
**testified** 4:18 6:8 6:22 10:1
**testify** 7:14 8:15 9:14,23 10:19 11:4 14:8 36:13
**testifying** 10:2 26:9
**testimony** 5:5,16 5:20 6:1,7 7:6 11:14 36:15,19 37:9
**thank** 30:16,22 32:1 35:1,3,8
**thanks** 35:6
**thereof** 37:8
**things** 26:13
**think** 5:15 25:21 35:6
**three** 6:19 18:21 23:13 24:5
**threw** 19:18
**throw** 18:11
**time** 4:2 7:15,20 8:11 22:16 24:15 30:17 35:5,7
**times** 6:18,19
**to-wit** 36:5
**today** 5:5,21 6:9 7:3 8:2 9:19 10:19 11:4 26:9 26:10,19 27:3 30:17 35:6
**toilet** 15:24
**tooth** 21:19
**toothbrush** 21:20
**topics** 6:8 7:15 8:15 9:22 10:2 10:16,19 11:4 11:11,15 14:8
**torn** 16:1 18:8,10 19:18 29:8 30:10,10 31:11
**training** 14:18 21:9
**transcript** 8:2 35:12 36:18
**trash** 21:18,18
**tried** 20:12,23
**trouble** 9:4
**true** 36:18
**truth** 36:13,14,14
**truthfully** 7:9
**try** 5:11 8:7,9 9:3 17:13
**trying** 8:18 13:1
**turn** 5:11 15:13 15:13
**turnover** 28:8
**two** 5:22,23 6:10 6:19 18:14 32:21,24
**type** 8:7 16:2 21:9,9 34:17
**types** 8:12

**U**

**unable** 26:4
**understand** 5:5 11:19 23:3 31:10
**understanding** 9:11,24 11:23 27:12
**understood** 7:10 7:21 8:4 14:1 30:16
**undetermined** 36:8
**United** 1:1 9:13 36:8
**unusual** 12:8 13:21,24
**use** 28:1 30:7,14
**usually** 18:21 20:4

**V**

**vague** 17:14 31:9
**verbally** 20:18
**version** 35:13
**Videoconference** 2:3,8,15
**Videoconferen...** 1:8
**visits** 34:12
**vs** 1:5

**W**

**Wacker** 2:2
**waive** 35:10
**waived** 36:21
**walk** 14:5 15:15
**walks** 16:23
**want** 9:2 10:17 11:20,20 25:20 25:21 26:21 30:19 32:3
**Warden** 12:17,18 12:20,21 13:9 13:10
**warehouse** 29:22
**wasn't** 26:4
**water** 15:12,13



15:24
**way** 11:22 17:10 17:13 20:14,21 21:4,12 37:6,7
**ways** 8:12
**we'll** 7:2,20 9:3,4 9:16 26:20 35:3 35:10,13
**we're** 8:3 10:16 18:17 19:3 26:13 29:10,21
**week** 5:22,23 16:12 21:17
**weeks** 5:22,23
**West** 2:7,14
**Wexford** 5:4
**WHEREOF** 37:9
**Whitfield** 2:12
**wipe** 28:11,14
**wiped** 28:16
**withdraw** 33:24
**witness** 4:5,15,17 5:6 7:4,5 11:1 11:19 15:20 17:16 19:15 20:4 23:21 24:13,24 26:9 28:6 29:6 31:10 32:16 33:6 35:8 36:7,12,15,17 36:19,20
**words** 13:1 20:9
**work** 15:24 16:9 17:23 18:1 20:10 25:5 31:4
**workers** 28:10
**working** 33:18
**works** 15:6 30:21
**wouldn't** 26:3
**wrap** 26:20
**writing** 36:17
**written** 20:19 21:3,8,11,13

**X**

**X** 3:1,9

**Y**

**Yeah** 5:11 8:20
**year** 19:4
**years** 14:14

**Z**

**zoom** 4:5 8:23

**0**

**1**

**1** 3:13 9:16
**1:18-cv-4482** 1:5
**10:08** 26:15
**100** 2:7
**13th** 2:7
**14** 3:3
**14th** 1:13 36:6
**150** 12:13,24
**17** 22:15 23:4 25:24
**19th** 37:10

**2**

**20,000** 19:4
**200** 30:4
**2016** 26:22 27:2
**2021** 1:13 3:3 36:6 37:11
**222** 2:14
**24** 22:5 24:16
**250** 30:4
**2900** 2:14

**3**

**30** 7:4 14:14
**30(b)** 6:13
**30,000** 19:4
**300** 12:13
**31** 3:6
**32** 3:6
**33** 3:7
**34** 3:7

**4**

**4** 3:5

**5**

**6**

**6** 6:13 7:4
**60601** 2:8
**60606** 2:3,14

**7**

**7** 6:12,15 7:15 8:15 10:2,4 11:4,15 14:8
**71** 2:2

**8**

**9**

**9** 3:13 6:12,15 7:15 8:15 10:2 10:8 11:4,15 14:9
**9:20** 1:13

