## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DEANDRE CRAWFORD, | |
| Plaintiff, | |
| v. | Case No. 18-cv-4882 |
| | Judge Mary M. Rowland |
| EVARISTO AGUINALDO, M.D., et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff DeAndre Crawford, an inmate within the Illinois Department of Corrections, has suffered from a number of health conditions, including severe pain in his back and shoulders. In 2018, Plaintiff sued Defendants Lidia Diaz, Evaristo Aguinaldo, and Ghalliah Obaisi, Independent Executor of the Estate of Saleh Obaisi, part of Crawford's medical team of Stateville Correctional Center; and their employer, Wexford Health Sources, Inc. Plaintiff brings this suit under 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs. The Defendants have now moved for summary judgment, seeking dismissal of the suit with prejudice [128]. For the reasons stated below, this Court grants in part and denies in part their motion [128].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). On summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

2

# BACKGROUND[1]

Plaintiff DeAndre Crawford ("Crawford") is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and was housed at Stateville Correctional Center ("Stateville") at the relevant time. DSOF ¶ 1. At all times relevant to Crawford's claims, Dr. Evaristo Aguinaldo was a staff physician at Stateville and Nurse Lidia Diaz was a nurse at Stateville. Ghaliah Obaisi acts as Independent Executor of the estate of Dr. Saleh Obaisi, who was a physician at Stateville. DSOF ¶ 2. (collectively, the "Medical Defendants"). The Medical Defendants were employed by Wexford, a company that provides medical care at Stateville. PSOF ¶ 6.

## I. Procedural History

On July 17, 2018, Crawford filed his complaint alleging his constitutional rights were violated while he was incarcerated at Stateville. Dkt. 1. In November 2018, the Court recruited counsel for Crawford. Dkt. 10. Crawford originally named various Stateville officials as defendants, but pursuant to the parties' stipulation to dismiss, those IDOC defendants were dismissed with prejudice in May 2022. Dkt. 145.[2]

The remaining defendants now move for summary judgment arguing that: (1) Crawford has failed to establish the Medical Defendants were deliberately indifferent to his health; and (2) his claim for punitive damages fails.

---

[1] These facts are taken from the Defendants' Rule 56.1 statements (Dkt. 129, "DSOF") and Plaintiff's Statement of Facts (Dkt. 138, "PSOF") and are undisputed unless otherwise noted.

[2] Wexford had previously been terminated as a named defendant in March 2019. (Dkt. 49).

## II. Crawford's Medical History

On August 19, 2014, Crawford presented for a medical evaluation, complaining of neck and left shoulder pain after falling off his top bunk in May 2014. Dr. Obaisi found that Crawford suffered from a shoulder and neck sprain and prescribed a non-steroidal anti-inflammatory drug ("NSAID") DSOF ¶ 5. *Id.* On September 29, 2014, Crawford reported that he again fell out of his bunk again as a result of a seizure. DSOF ¶ 7. At his visit with medical staff, he complained of pain in his right shoulder, neck, lower back, and hips and was provided analgesic balm. *Id.*

On January 28, 2015, at a medical evaluation, the medical provider[3] diagnosed Crawford's condition as trapezius strain and prescribed Mobic, a different NSAID. DSOF ¶ 8. Crawford attended another medical evaluation on July 15, 2015, complaining of back pain. DSOF ¶ 8. He was provided Ibuprofen and advised to restrict his activities. *Id.*

On January 24, 2016, Crawford attended a nurse sick call appointment. DSOF ¶ 9. The nurse provided Crawford with Tylenol. *Id.* On March 30, 2016 Crawford returned for a nurse sick call complaining of left shoulder pain. DSOF ¶ 10. The nurse referred him to the prison's physician assistant, LaTanya Williams ("PA Williams") (who is not a named defendant in this suit.) *Id.* Shortly after Crawford attended a medical evaluation with PA Williams. DSOF ¶ 11. PA Williams noted discomfort of the shoulder and assessed Crawford's condition as "probably bursitis." *Id.* She prescribed him an NSAID, analgesic balm and heat. *Id.* On May 19, 2016, Crawford

---

[3] The parties dispute whether it was Dr. Obaisi who provided care on this date. Dkt. 138 at ¶ 7.

4

attended a follow-up visit with PA Williams for his continued shoulder pain. DSOF ¶ 12. She prescribed him Mobic for one month and Robaxin for seven days. *Id*. She also ordered an X-ray of the left shoulder, which was negative for any severe bone or joint pathology. *Id*.

On June 10, 2016, Crawford attended a visit with a nurse practitioner due to complaints of his left shoulder pain. DSOF ¶ 13. The nurse practitioner diagnosed his condition as chronic rotator cuff tendonitis and prescribed Crawford with sixty tablets of Tylenol and a home exercise plaint. *Id*. On July 8, 2016 Crawford refused a nurse sick call appointment with Nurse Diaz. DSOF ¶ 14. He signed a refusal form but attended a nurse sick call the next day. On July 10, 2016, Crawford attended another nurse sick call, in connection with his shoulder pain and was prescribed ibuprofen for three days. *Id*. The nurse also scheduled Crawford to be seen by PA Williams again. *Id*. On July 12, 2016, Plaintiff's prescription for 60 tables of Tylenol was renewed. DSOF ¶ 16.

### III. The July 2016 Shakedown and Crawford's Subsequent Medical Care

On July 12, 2016, an IDOC tactical team performed a shakedown of Crawford's cell. DSOF ¶ 17. According to Crawford, his mattress was removed from his cell during the shakedown. DSOF ¶ 18. Crawford notified multiple IDOC correctional staff members about his missing mattress and requested, in multiple grievances, that it be replaced.[4] DSOF ¶ 19. Crawford was offered a mattress on July 20, 2016 but refused it due to its poor condition. DSOF ¶ 20. Crawford also alleges that he slept

---

[4] Plaintiff did not know whether Dr. Obaisi, Dr. Aguinaldo, or Nurse Diaz reviewed any of his grievances while he was at Stateville. DSOF ¶ 44.

on a hard steel bed frame for seventeen days until he received a suitable replacement mattress on July 29, 2016. DSOF ¶ 21.

On July 13, 2016, the day after the shakedown, Crawford presented for an evaluation with PA Williams in connection with complaints of shoulder pain, stemming from a fall from his top bunk two years before. DSOF ¶ 23.During the examination, PA Williams found there were no acute changes since the last examination. PA Williams prescribed Mobic 7.5mg for one month and referred him to the physician's sick call. *Id.* It was not recorded in the progress note that Crawford reported that his mattress had been removed the day before. *Id.*

On July 15, 2016, Crawford attended an evaluation with Dr. Aguinaldo in connection with shoulder pain that began two years ago. DSOF ¶ 23. Dr. Aguinaldo found that there was slight pain with range of motion, but no stiffness. *Id.* It was not recorded in the progress note that Crawford reported his mattress was removed three days before. *Id.* Dr. Aguinaldo instructed Crawford to continue taking his prescribed medications, complete his home exercise plan, and to follow up in five weeks. *Id.*

On July 17 and July 20, 2016, Plaintiff presented for nurse sick calls with Nurse Diaz[5]. DSOF ¶ 24. On both occasions Nurse Diaz resubmitted the Mobic prescription to the pharmacy. *Id.* Nurse Diaz testified that nurses cannot prescribe medication so if medication is needed, the nurse must refer the patient to a physician.

---

[5] This fact is disputed in part. Defendants claim that Crawford attended the sick call with complaints that he did not receive his Mobic prescription. Plaintiff claims that Crawford attended the call to "obtain treatment for pain in his back, hips, and shoulders, which he attributed to not having a mattress." Dkt. 138-2. The progress note does not state that Crawford complained of his missing mattress. DSOF ¶ 24.

DSOF ¶ 46. On July 21, 2016, PA Williams wrote a note stating the pharmacy advised her of a potential negative reaction between Mobic, the medication requested by Nurse Diaz, and another drug Crawford was prescribed. DSOF ¶ 26. Therefore, PA Williams cancelled the prescription and arranged for Crawford to visit with Dr. Obaisi. *Id.*

On July 28, 2016, Crawford met with Dr. Obaisi for a medical evaluation. DSOF ¶ 26. (As discussed further below, the parties dispute the reason Crawford attended the appointment). The progress note did not indicate Crawford complained of his missing mattress. DSOF at ¶ 26. At his appointment, Dr. Obaisi observed tenderness to the long head of the brachial left biceps. *Id.* He administered an intramuscular injection to the left shoulder of Depomedrol, a steroid used to treat muscle inflammation. *Id.* On July 29, 2016, Crawford received a mattress from IDOC. PSOF ¶ 7. In the weeks that followed, Crawford was seen by medical providers on multiple occasions. DSOF ¶ 27. On August 29, 2016, at a visit with Dr. Obaisi, Dr. Obaisi noted no acute changes and ordered an X-ray of the lumbar spine and prescribed Crawford Mobic for seven days. DSOF ¶ 28. He also ordered laboratory testing for rheumatoid arthritis, sedimentation rate, and C-reactive. *Id.*

On September 8, 2016, Crawford attended a nurse sick call with Nurse Diaz. DSOF ¶ 29. Crawford inquired about when he would get an X-ray and labs done. *Id.* The X-ray was performed on September 12, 2016. DSOF ¶ 30. The laboratory testing was done on September 13, 2016. DSOF ¶ 31. The X-ray was negative for bone or

joint pathology. DSOF ¶ 30. The lab results for rheumatoid arthritis, sedimentation rate, and C-reactive were all within normal limits. DSOF ¶ 31.

On October 4, 2016, Crawford refused a sick call with Nurse Diaz. DSOF ¶ 32. On December 20, 2016, Crawford met with Dr. Aguinaldo, complaining of hip pain. DSOF ¶ 33. Dr. Aguinaldo ordered an X-ray of the hip and lumbar spine, both of which were negative for any pathology. *Id.* On January 7, 2017, Crawford followed up with Dr. Aguinaldo. DSOF ¶ 34.

On January 29, 2018, Crawford presented for evaluation with PA Williams complaining about a "myriad of other medical complaints." DSOF ¶ 35. PA Williams prescribed Indocin, referred Crawford to physical therapy, and ordered an X-ray. *Id.* Both x-rays were negative for pathology. DSOF ¶ 36. From February 23 to April 10, 2018 Crawford attended physical therapy for his left shoulder. DSOF ¶ 37.[6]

On summary judgment, the testimony in the record is from: (1) Dr. Aguinaldo, (2) IDOC corporate representative Major Lake, (3) Nurse Diaz, (4) IDOC corporate representative Dan Artl and (4) Plaintiff DeAndre Crawford. Each party also provided an expert report: Plaintiff's expert Dr. Vincent Cannestra and Defendant's expert Dr. Chadwick Prodromos. The parties' dispute centers on whether the Medical

---

[6] Defendants contend that Crawford failed to fully comply with Local Rule 56.1. Dkt. 143 at 3. "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.,* 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.,* 919 F.3d 405, 414 (7th Cir. 2019) (internal citation and quotations omitted). Defendants request that this Court strike Plaintiff's paragraphs 4, 9, 10, 13, 16, 25 and 26 in his Statement of Additional Facts. *Id.* at 4. While the Court will not strike all of those paragraphs, the Court will address in its analysis certain facts that are unsupported by admissible evidence and/or rely on legal argument.

Defendants had any responsibility for ensuring Crawford received a replacement mattress and whether Nurse Diaz's alleged failure to provide treatment constituted deliberate indifference.

## ANALYSIS

### I.    Eighth Amendment Claims

The Eighth Amendment requires prison officials to provide healthcare to incarcerated inmates who cannot obtain healthcare on their own, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021), and imposes liability on prison officials who act with deliberate indifference to a substantial risk of serious harm to inmates, *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). The deliberate indifference standard encompasses both objective and subjective elements: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan*, 987 F.3d at 693 (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)); *see also Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021).

The objective component requires Plaintiff to demonstrate that he possessed a medical condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). The subjective element, on the other hand, requires Plaintiff to prove that Defendants acted "with a 'sufficiently

9

culpable state of mind.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Seventh Circuit has characterized this as a "high hurdle" because a plaintiff must demonstrate "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks omitted). In other words, a defendant must have made a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id. (quoting Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).

Defendants do not dispute that Crawford suffered from a sufficiently serious medical need. Rather, Defendants argue that they "treated Plaintiff's alleged medical conditions based upon sound clinical judgment, and within the appropriate standard of care." Dkt. 128 at 11. In response, Crawford argues that disputed issues of material fact show that summary judgment is not warranted, namely: (1) whether the Defendants had the ability to help Crawford get a replacement mattress; (2) whether failing to request a mattress for Crawford constitutes deliberate indifference; and (3) whether Nurse Diaz's failure to provide treatment constitutes deliberate indifference. Dkt. 137 at 10–12.

### A. Mattress Claim against all Medical Defendants

### 1. Medical Defendants' Ability to Help Secure a Mattress[7]

The Court is not persuaded by the Medical Defendants' argument that summary judgment must be granted because they had no control or input regarding Crawford receiving an adequate mattress.

Crawford provides sufficient evidence that the medical staff *did* have the power to request a mattress for inmates. Crawford's medical records show that the Medical Defendants had medical permit forms that allowed them to make requests to IDOC for changes to Crawford's cell or his conditions of confinement when necessary. Dkt. 139-5 at 49–54. In fact, the evidence shows that the Medical Defendants requested to IDOC personnel, for example, for Crawford to be placed on a low bunk within a low gallery (Dkt. 139-5 at 52) and that he receive ice four times a day. (*Id.* at 51). Even more, on two different occasions medical personnel wrote in

---

[7] Defendants argue that on summary judgment, Crawford has alleged a new conditions of confinement claim. Dkt. 128 at 10, n. 1. Although Crawford broadly refers to "both the conditions of his confinement and the medical treatment" (Dkt. 137 at 2), the Court construes his complaint and response brief as arguing a deliberate indifference to medical needs claim. Indeed his footnote addressing this argument states, "Plaintiff's complaint clearly alleges that the Wexford Defendants failed to provide him adequate medical care." Dkt. 137 at 11, n. 2. Moreover, courts construe "mattress claims" as such when allegations are against medical personnel for failing to provide the necessary care – i.e., a mattress for orthopedic issues. *See Hernandez v. Illinois Department of Corrections*, 17-CV-1335-NJR, 2021 WL 3353860 at *8, (S.D. Ill. Aug. 2, 2021) (denying summary judgment on a deliberate indifference of medical care claim where a doctor did not adequately request a mattress for the plaintiff); *Arce v. Barnes*, 662 Fed. Appx. 455 (7th Cir. 2016) (evaluating a claim of a missing mattress as a deliberate indifference of medical care claim where the allegations focused on the medical personnel's conduct). And Crawford's put Defendants on notice of his claim about his care and not receiving a mattress. See Dkt. 1 ¶ 107. ("Crawford was seen by Dr. A about the pain he was suffering from sleeping on the bare steel frame."); *Id.* ¶ 259–61. ("RN Lidia [Defendant Diaz] at all relevant times was aware of the physical pain Crawford suffered from sleeping on the bare steel frame. RN Lidia knew or should have known that sleeping on bare steel cause [sic] certain pains to the human body. By refusing to treat Crawford's paint RN Lidia acted with deliberate indifference to a basic human need."); *Id.* at ¶¶ 269–70. ("At all relevant times Dr. Obaisi was aware of the pain Crawford suffered while sleeping on the bare steel frame. Dr. Obaisi knew or should have known that sleeping on bare steel causes certain pains to the human body.").

the "other" section of the permit requests, and made requests that were not listed options on the permit for Crawford only be placed in front cuffs (*id.* at 53) or double cuffs (*Id.* at 54). Additionally, Major Maurice Lake, IDOC's corporate representative, testified that if an inmate "complains about an issue or medication condition that he needs a new mattress, a double mattress … then they could provide a permit for them to have two mattresses." Dkt 139-8 ("Lake Dep.") at 32:7–21. Lake also testified that if a nurse were told by an inmate that they did not have a mattress, they would "make notification to the gallery officer" who would then take action. *Id.* at 33:15–20.

In *Hernandez v. Illinois Department of Corrections,* 17-CV-1335-NJR, 2021 WL 3353860 (S.D. Ill. Aug. 2, 2021), the court found that there was an issue of material fact as to whether prison doctors were deliberately indifferent to a serious medical condition by failing to provide him with a functioning mattress when the plaintiff complained to the medical staff. In that case, the doctor ordered a new mattress for the plaintiff multiple times and directed prison personnel to turn the Plaintiff throughout the day to help heal his ulcer. *Id.* at *7. The plaintiff's expert admitted the treatment provided ultimately healed him because of his medical care. *Id.* Even then, the court held that whether the initial injury became worse because of the lack of a mattress was an issue that must be resolved by a jury. *Id.* at *8 ("a jury could find Dr. Coe and Allender were deliberately indifferent to a serious risk of harm to Hernandez by failing to provide him with a functioning air mattress in 2016."). Similar to *Hernandez*, the Court declines to grant summary judgment to Defendants on the basis that they had no control over Crawford's need for an adequate mattress.

12

### 2. There is a Question of Fact about Whether the Medical Defendant's Failure to Help Secure an Adequate Mattress was Deliberate Indifference

Defendants contend that there is no triable issue of fact on Crawford's claims that they were deliberately indifferent to his medical conditions. They argue that they (1) were unaware of Crawford's need for a mattress and (2) provided him with adequate medical care during his visits even though it did not include requesting a mattress. The Court takes each issue in turn.

In support of the contention that the Medical Defendants were not aware that Crawford needed a mattress, they rely on the lack of notation in the appointment notes about Crawford's mattress need. Dkt. 129 at ¶ 27. Crawford responds that he did regularly explain to the medical staff that his medical problems were due to his missing mattress. *See, e.g.*, Dkt. 138 ¶¶ 12 ("As part of their examinations, the Wexford Defendants would have asked Crawford about the cause of his pain. Indeed, the Stateville Correctional Center treatment protocol for muscle strain and joint pain includes asking the offender what caused the injury."); *Id.* at ¶¶ 27-28 ("Crawford told Diaz he was in pain because of the manner in which he was being forced to sleep."). Indeed, the progress notes submitted do show that the Nurse protocol provides a section to list out "what caused the pain." Dkt. 139-5 at 25, 32. In neither note does Nurse Diaz note Crawford's lack of a mattress.

However, Crawford's declaration states that during his interactions with medical personnel after the shakedown, he informed the Medical Defendants that "the pain began after [his] mattress was removed during the Orange Crush

13

shakedown and that sleeping on the bare steel bedframe was causing (or exacerbating) my injuries.") Dkt. 139-2 at ¶ 5. Further, Crawford stated that he specifically recalled informing Nurse Diaz during sick call on either July 17, 2016 or July 20, 2016 that the pain in his back, hips and shoulders was due to being forced to sleep without a mattress. *Id*. at ¶ 6. Defendants do not appear to challenge Crawford's declaration. Therefore, construing the facts in the light most favorable to Crawford as the non-moving party, there is a question of fact as to whether the Medical Defendants should have done more to secure Crawford an appropriate mattress and whether the Medical Defendants were deliberately indifferent to his medical needs.

The Medical Defendants argue that even if they did not request a mattress, they followed the appropriate standard of care and provided adequate treatment to Crawford. Dkt. 129 at 9. Defendants present evidence that they provided extensive treatment to Crawford including frequent evaluations, X-ray interrogation, laboratory testing, and NSAID prescriptions. Dkt. 129 at 9. Both parties presented expert testimony as well, discussed further below.

Crawford, in contrast, argues that a jury could infer that even if the Medical Defendants provided *some* care, their decision not to request a mattress was a deliberate decision to deny access to treatment that was medically necessary and therefore provided him inadequate care. Dkt. 137 at 6.

To prevail on a deliberate indifference of medical care claim, Crawford must show that the Medical Defendants had subjective knowledge of – and then disregarded – an excessive risk to his health. *Gayton v. McCoy*, 593 F.3d 610, 653 (7th

14

Cir. 2010). Inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, to be liable for deliberate indifference, the medical professional must have made a decision that was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Additionally, inmates are not entitled to a specific care or even the *best* care possible. *Walker v. Wexford Health Sources, Inc.,* 940 F.3d 954, 965 (7th Cir. 2019); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Therefore, to succeed on a deliberate indifference claim, a plaintiff must show that a defendant's actions were more than negligence or even medical malpractice. *Estelle,* 429 U.S. at 106. Courts "must examine the totality of an inmate's case" when considering whether that care evidences deliberate indifferences to his medical needs. *Gutierrez v. Peters,* 111 F.3d 1364, 1375 (7th Cir. 1997).

Further, a doctor's choice of the "easier and less efficacious treatment" for an objectively serious medical condition can still amount to deliberate indifference under the Eighth Amendment. *Estelle,* 429 U.S. at 104 & n. 10; *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (holding that a doctor's choice to pursue a less effective treatment for a serious medical condition can constitute deliberate indifference.); *Williams v. Vincent,* 508 F.2d 541 (2d. Cir. 1974) (holding that medical personnel cannot "simply resort to an easier course of treatment that they know is ineffective."); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (noting that persistence in a course of treatment "known to be ineffective" violates the Eighth Amendment). A significant

delay in *effective* medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain. *Grieverson v. Anderson,* 538. F.3d 763, 779 (7th Cir. 2008) (holding the evidence of a delay in treatment that resulted in exacerbating pain could allow a jury to infer deliberate indifference).

In this case, there is sufficient evidence raising a question of fact about whether the Defendants were deliberately indifferent by pursuing a less effective treatment for Crawford's injuries. The evidence indicates that Crawford complained to the Medical Defendants about his lack of mattress over the 17 days and that the Medical Defendants had the ability to request a new mattress for him and that IDOC would comply with the requests. Yet, the Medical Defendants never requested a new mattress for Crawford. Rather, they continued to prescribe him NSAIDS (one which contradicted with another medication of his and he therefore never received) even though Crawford complained his pain was only getting worse with treatment. Both experts agree that seventeen days without a mattress would exacerbate previously existing injuries Dkt. 129-6 at 7; Dkt. 129-7 at ¶ 40. As discussed below, Plaintiff's expert testimony supports a finding that the Medical Defendants should have requested a new mattress as part of their medical treatment of Crawford. Though the Defendants provided *some* care, on this record, a jury could find that the Medical Defendants were deliberately indifferent to a serious risk of harm to Crawford by failing to provide him with a new mattress.

### 3. The Parties' Experts

Each party retained an orthopedic expert in this case. Crawford retained Dr. Cannestra, who is a medical doctor with a specialization in orthopedic surgery. The Medical Defendants retained Dr. Chadwick Prodromos, a physician board certified in orthopedic surgery. Dkt. 126-6 at 6. Dr. Cannestra's report opines that the Medical Defendants should have requested a mattress for Crawford, and that doing so was within their professional responsibility. Dkt. 129-7 at ¶¶ 39–40. Dr. Prodromos opines that the Medical Defendants' care was reasonable, compassionate, and well within the community standard of care. Dkt. 129-6 at 4; DSOF ¶ 41.

The Defendants argue that summary judgment should be granted because Dr. Cannestra did not "give any opinions criticizing the medical treatment provided to Mr. Crawford," and his testimony about the responsibility of the doctors to order a mattress is outside the scope of his knowledge. Dkt. 128 at 2, 10. Without an opinion that the medical care provided was deficient, Defendants argue, Plaintiff cannot succeed on his deliberate indifference claim. Notably, Defendants did not file a motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) or raise *Daubert* in their summary judgment motion or reply brief. Dkt. 128, 143.[8]

---

[8] For the first time in their reply brief, Defendants reference Federal Rule of Evidence 702 and argue that Dr. Cannestra was "unqualified" to make the statements he did. Dkt. 143 at 5. Defendants raise this argument too late and with too little development. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005) (argument raised in reply brief was too late); *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (the court is not required on summary judgment to scour the record or make the parties' arguments for them). Moreover, this is not a case requiring the Court to *sua sponte* prohibit Crawford's expert testimony at this stage, and "it is not this Court's job to make credibility determinations regarding the expert's opinions on summary judgment." *Manjarrez v. Georgia-Pac. LLC*, No. 12 C 1257, 2013 WL 3754861, at *5 (N.D. Ill. July 16, 2013) (citation omitted).

Crawford responds that Dr. Cannestra opines that the Medical Defendants' course of treatment "was inadequate because they did not make multiple attempts to obtain him a mattress." Dkt. 137 at 10. Defendants do not argue that Dr. Cannestra is unqualified to opine about orthopedic issues or medical treatment for those issues. Rather, Defendants argue that he does not know the process by which an inmate can request a mattress or if medical personnel have the power to do so. Dkt. 138 at 9. The Court is not persuaded by Defendants' argument.

Defendants contend that "courts require plaintiffs to offer verifying medical evidence that the delay (not the inmate's underlying medical condition) caused some degree of harm." Dkt. 128 at 8. They rely on *Williams v. Leifer*, 491 F.3d 710, 714-15 (7th Cir. 2007). However, unlike here, the plaintiff in *Williams* did not present any expert testimony. *Id.* at 715. ("Williams claims that his testimony, his medical records, and his treatment are sufficient to show the delay's detrimental effect."). The Court stated that "expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement." *Id.* Defendants do not cite any case law requiring a doctor to have knowledge of the prison administrative procedures in order to opine about an inmate's medical conditions and treatment failures giving rise to deliberate indifference to the inmate's medical needs.

Defendants contend that Dr. Cannestra makes unfounded and speculative statements, but Dr. Cannestra in his report specifically states that to form his opinions, he:

> relied on my education, training, and professional experience as an
> orthopedic surgeon. My opinion is based on my review of Crawford's

medical records produced by IDOC, Crawford's grievance materials, and Crawford's deposition in this case. In connection with the preparation of this report, I also interviewed Crawford regarding his conditions and the circumstances giving rise to his injuries.

Dkt. 129-7 at ¶ 3. Dr. Cannestra opined that "the aggravation of Mr. Crawford's conditions was due to the stress and strain he experienced as result of being forced to sleep on the steel bedframe" and "if the medical staff was aware that Mr. Crawford did not have a mattress to sleep upon, then the medical staff bore some responsibility in ensuring that Mr. Crawford received a mattress in a timely fashion…" Dkt. 129-7 at ¶¶ 38–39. Cannestra also explained that Crawford's 17 days without a mattress "led to an unacceptable, unreasonable, unnecessary and prolonged aggravation of his pre-existing orthopedic conditions." *Id.* at ¶ 40. Additionally, at his deposition, Dr. Cannestra testified that not making some effort to help an inmate obtain a mattress is a deviation from the standard of care given Crawford's preexisting issues. Dkt. 129-7 at 61:21–4.

This is a case of competing expert testimony. The Court declines Defendants' invitation to disregard Crawford's expert's opinions. Instead, both expert's testimonies support the conclusion that there are issues of fact requiring resolution by a jury.

### B. Claim Against Nurse Diaz for Failure to Provide Treatment

Next, Crawford argues that Defendant Diaz was "deliberately indifferent to his serious medical needs by refusing to provide any treatment and by affirmatively interfering with his ability to request treatment." Dkt. 137 at 12. Specifically, Crawford's claims against Diaz are that she: (1) charged him a co-pay without

treatment (2) did not request a mattress and (3) failed to see him during sick call. *See* Dkt. 1. Defendants argue the Court should grant summary judgment in their favor as to the deliberate indifference claim against Nurse Diaz because the treatment she provided in her role as a nurse was reasonable. The Court agrees, in part.

Preliminarily, Defendants are correct that Crawford cannot pursue a deliberate indifference claim against Nurse Diaz on the premise that she charged him a $5 co-pay "absent administering any treat[ment]" [sic]. Dkt. 1 at ¶ 262; *Gayton*, 593 F.3d at 653. On summary judgment, he contends that on one occasion Diaz removed him from the sick call list without providing him treatment for his pain, and days later when he asked to attend sick call, Diaz instructed officers to not let him out his cell. Dkt. 137 at 12. He contends that this interference, and ultimate delay in his treatment equates to deliberate indifference.

While an intentional delay in treatment can be considered deliberate indifference of medical care under the Eighth Amendment, the summary judgment record in this case does not support such a finding.

Notably, Crawford's expert does not specifically address Nurse Diaz's treatment of Crawford. On the other hand, Dr. Prodromos opined that Diaz adequately made referrals to physicians and mid-level practitioners and provided treatment where needed. 129-6 at 7. Further, while Crawford's declaration states that Nurse Diaz saw he did not have a mattress when she visited him at his cell, and he recalled telling her that his pain was due to the lack of mattress in his cell this only goes to the already addressed claim regarding the mattress. Dkt. 139-2 at ¶ 6.

In his deposition, Crawford states that Nurse Diaz "kicked [him] out of sick call." (Dkt. 139-3, 41:13–16). A July 20, 2016 grievance report shows that Crawford complained that Nurse Diaz put him out of sick call, but the report also states that he was "seen but not treated by Nurse Diaz." Dkt. 139-4 at 4. The parties state that this incident occurred on July 17, 2016. PSOF at ¶ 27, 28; Dkt 142 at ¶ 27, 28. The summary judgment record also contains a progress report dated July 17, 2016. Dkt. 129-5 at 17. Nurse Diaz testified in her deposition that she wrote the note during her sick call visit with Crawford on July 17, 2016. Dkt. 129-4 at 104:9. The note shows that Crawford complained of not getting his previously prescribed medication. Nurse Diaz testified, and the note shows, that she resubmitted a copy of the script to the pharmacy and referred him to follow up. *Id.* at 104:16-18; Dkt. 12-5 at 17.

Crawford also alleges that at some point between July 17, 2016 and July 29, 2016 Nurse Diaz instructed the correctional officer to not let Crawford out to attend sick call. PSOF ¶ 28. During this period however, Crawford was seen by Dr. Obaisi. DSOF at ¶ 26. Lastly, Crawford seems to imply that Diaz is liable for deliberate indifference for prescribing medication that conflicted with a medication he was taking at the time. However, it is undisputed that Nurse Diaz (and other nurses) cannot prescribe medication. Rather, a nurse must refer a patient to the doctor to determine what medication is necessary. Dkt. 138 at ¶ 46.

Claims for deliberate indifference can include intentional delay in access to medical care. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). Here however, there are also no facts to show when, or for how long, any delay

occurred. Rather, the evidence shows that Crawford visited with Dr. Obaisi within the time frame Crawford he says Diaz denied him medical care. This defeats Crawford's argument. *See Greeno*, 414 F.3d at 656 (holding that referring the matter to medical providers that can provide treatment is not considered deliberate indifference). Generally, to determine that a delay in treatment was deliberate indifference, courts consider the gravity of the injury in relation to the delay. *Grieveson,* 538 F.3d at 778–80. Further, the delay must have exacerbated the injury. *McGowan v. Hulic*k, 612 F.3d 636, 640 (7th Cir. 2010). Crawford does not argue that Diaz's refusal to treat him exacerbated the injury. Even taking as true that Nurse Diaz refused to see Crawford on one sick call between July 17, 2016 and July 29, 2016, no jury could reasonably find that Nurse Diaz was deliberately indifferent in providing medical care to Crawford, aside from not requesting a new mattress. Therefore, Crawford may not pursue his deliberate indifference claim against Nurse Diaz to the extent that she (1) wrongly charged a co-pay, (2) prescribed medication that conflicted with a medication he was taking or (3) delayed treatment. He may only proceed with his claim of deliberate indifference based on failure to request a mattress against Nurse Diaz and the other Medical Defendants.

## II. Claim for Punitive Damages

### A. Crawford's claim for punitive damages

Finally, Defendants ask this Court to deny Crawford's request for punitive damages. Punitive damages serve three purposes: (1) to "punish blameworthy behavior" (2) deter defendants from committing future bad acts" and (3) to deter

others from committing future bad acts. *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018).

Defendants assert that there is no evidence they were motivated by "evil intent" as required to obtain punitive damages under § 1983. Dkt. 128 at 12. Further, Defendants argue that the Court should not consider granting punitive damages against Defendant Obaisi's estate. *Id.* Crawford asserts that there is sufficient evidence for a jury to conclude that the Defendants acted with "callous disregard" for Crawford's rights because though he was provided some care, it was nothing more than a "one-size-fits-all" approach. Dkt. 137 at 14. As for the estate of Defendant Obaisi, Crawford argues that there is no circuit-level precedent establishing that punitive damages are unavailable against deceased defendants.

In a § 1983 action, a jury may assess punitive damages when a defendant's conduct is shown to be "motivated by evil motive or intent" or when it involves "reckless or callous indifference to the federally protected rights of others." *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019) (*quoting Smith v. Wade*, 461 U.S. 30, 56 (1983). The standard is the same as § 1983 liability. *Woodward v. Corr. Med. Servs. of Ill.*, 368 F.3d 917, 930 (7th Cir. 2004).

There is a legitimate dispute about whether the Medical Defendants acted with deliberate indifference as to Crawford's medical needs, so it follows that a jury could find that they had callous disregard toward him. *Id.* Crawford bears the burden of showing the Medical Defendants acted with callous disregard, but the Court will not

strike this request at this stage. Therefore, a jury could find that punitive damages are warranted.

## B. Punitive damages against Dr. Obaisi's estate

The harder question is whether punitive damages should awarded against the estate of Defendant Dr. Obaisi. Both parties acknowledge that the Seventh Circuit has not decided the issue.

However, courts in this circuit have addressed whether inmates can get punitive damages specifically from Dr. Obaisi's estate. *See Snow v. Obaisi*, 2021 WL 4439421 at *10 (N.D. Ill. Sept. 28, 2021) (denying plaintiff's request for punitive damages against Obaisi's estate because it would not punish him or deter future conduct because he was dead.); *Zavala v. Obaisi*, 2021 WL 1172774 at *12 (N.D. Ill. Mar. 29, 2021)(following the reasoning in three other district court cases and finding that punitive damages are not available against Dr. Obaisi's estate.); *Flournoy v. Estate of Obaisi*, 17 CV 7994, 2020 WL 5593284 (N.D. Ill. Sept. 18, 2020)(finding that punitive damages would not serve the purpose of deterring Dr. Obaisi's behavior nor punish him because he was deceased); *C.f. Silva v. Mitchell*, 18-v-1300 2021 WL 4477959 at *22 (N.D. Ill. Sept. 30, 2021) (declining to take up whether the plaintiff could get damages from Obaisi's estate before trial).

Both parties cite one other case involving deceased defendants in § 1983 cases. *Kahlily v. Francis*, 08 C 1515, 2008 WL 5244596 (N.D. Ill. Dec. 16, 2008). In *Kahlily* the court reasoned those punitive damages would not serve two of its three purposes (deterrence of the defendant, punishment of the defendant and deterrence to others).

24

Specifically, it would not deter the deceased defendant, nor would it punish him. Crawford argues that Defendants reliance on *Kahlily* is misplaced because the court ignored the goal to deter others from future violations. Dkt. 137 at 16–17. That is not true because the court there found that "[w]hatever incremental deterrence value imposing punitive damages on deceased defendants would have on others does not outweigh the fact that two of the major purposes for imposing punitive damages would not be served at all." *Kahlily,* 2008 WL 5244596 at *6. Here the deceased defendant's estate will still face claims that carry compensatory damages, and the availability of punitive damages against the living defendants serves the deterrent purpose.

The Court thus follows the majority view in this district. The Court grants the motion for summary judgment on the punitive damages claim against Dr. Obaisi's estate only.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment [128] is granted in part and denied in part. Plaintiff may proceed on his claim for deliberate indifference against all the Medical Defendants based on his need for a mattress, but may not proceed on his claims against Diaz for other claims of deliberate indifference. Defendants' motion for summary judgment on the punitive damages claim is granted as to the Estate of Saleh Obaisi but denied as to the other defendants.

E N T E R :

Dated: September 30, 2022

_____

MARY M. ROWLAND
United States District Judge